IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY SCOTT MCGEE,                                    CV. 09-455-MA

          Petitioner,                          OPINION AND ORDER

    v.

J.E. THOMAS, Warden, FCI
Sheridan,

          Respondent.

Per C. Olson
Hoevet Boise & Olson, P.C.
1000 S.W. Broadway, Suite 1500
Portland, OR 97205

    Attorney for Petitioner

KENT S. ROBINSON
Acting United States Attorney
District of Oregon
SUZANNE A. BRATIS
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

    Attorneys for Respondent

MARSH, Judge

    Petitioner, an inmate at FCI Sheridan, brings this habeas

corpus proceeding pursuant to 28 U.S.C. §§ 2241, 1331, and 1343(4),

challenging the Bureau of Prisons' (BOP) decision to place him in a residential reentry center (RRC) for only 30 to 60 days prior to his release date.    Petitioner is one of several FCI Sheridan inmates challenging BOP policies following the amendment of 18 U.S.C. § 3624(c), known as the Second Chance Act, Pub. Law 110-199, § 231, 122 Stat. 657 (April 9, 2008)(SCA), which increased an inmate's RRC eligibility from six months to twelve.    For the reasons that follow, petitioner's habeas corpus petition is DENIED, and this proceeding is DISMISSED.

## BACKGROUND

I.    **Factual Background.**

This action arises out of two criminal proceedings in which petitioner was sentenced to two concurrent 60 month terms of imprisonment for Bank Robbery, to be followed by three years supervised release.    See United States v. McGee, CR 02-316-01-BR and 02-361-01-BR.

Petitioner's term of supervised release commenced on January 5, 2007.    While on supervised release, petitioner committed a property offense (Burglary II), and was prosecuted in state court. On June 23, 2008, the Honorable Anna J. Brown found petitioner to be in violation of the terms of his supervised release in both federal cases, and sentenced him to concurrent 18 month terms of imprisonment (to run concurrently with his new state conviction).

Judge Brown also reimposed an 18-month term of supervised release with the following special condition:

> The defendant shall reside in and satisfactorily participate in a residential re-entry center to include a prerelease component, if determined appropriate by the residential re-entry center manager and the U.S. Probation Officer, for up to 120 days or until discharged by the residential re-entry center manager and the U.S. Probation Officer.

Petitioner was received at FCI Sheridan on February 25, 2009. On March 11, 2009, petitioner's case manager, Paul Perona, considered petitioner's initial classification at FCI Sheridan. In so doing, Mr. Perona wrote an email to petitioner's probation officer, Matt Preuitt, stating:

> I explained to Mr. McGee that with the 120 day [Public Law Placement] I am restricted to 30-60 days of pre-release without the Regional Director's approval. [T]here simply isn't time for that and frankly he does not have a need for more than the total 180 days.  He has employment lined up and is working on housing already. Our interpretation is there is a 120 day Public Law Placement and a pre-release component.  His interpretation is you wanted him to have 120 days of pre-release.
>
> When you get time could you review and get back with me on the intentions.  (Petitioner's Supporting Memo., Exh. 4.)

Mr. Preuitt responded:

> This was added as a special condition on his revocation order.  The purpose was to have a place for McGee to stay when he gets out to help him transition successfully into the community.  I would support a[n] RRC placement though, according to BOP policy and procedure. (Id.)

On April 17, 2009, Case Manager Perona conducted petitioner's "Second Chance Act" review.  Mr. Perona recommended that petitioner receive a pre-release RRC placement range between 30 and 60 days based upon multiple factors including the fact that "[h]e has a post-release RRC placement of 120 days to complete." (Respondent's Response, Exh. 1 at 5.)  According to petitioner, he was "informed by BOP staff that were it not for language in the Court's orders revoking his supervised release, he would be eligible for placement in a halfway house 150 to 180 days prior to his projected release date of September 8, 2009." (Habeas Petition at 4.)

On June 2, 2009, petitioner attended a regularly scheduled program review with Mr. Perona, at which time petitioner's pre-release RRC placement was reviewed.  Petitioner was given the opportunity to provide additional information for consideration. Petitioner reiterated his concern about the BOP's policy against "stacking" the 120-day Public Law Placement contained in Judge Brown's order, and pre-release RRC time.  Mr. Perona informed petitioner that "the combination of Public Law Placement and Pre-Release RRC is no longer an issue when considering inmates for RRC placement." (Respondent's Status Report (#7), Exh. 1 at 2.)  At the conclusion of the program review, Mr. Perona adhered to his recommendation of a 30-60 day pre-release RRC placement based upon the following factors:

    a.    An RRC is to assist in smooth transitions back into the community.  His short (18 month) sentence, that he has a job awaiting him, and the RRC is 1 hour from his job site in Oakridge, Oregon, indicates little can be accomplished by a lengthy placement.

    b.    During supervision he threatened both RRC staff & treatment staff.  His continued drug use, inability to control anger led to an arrest (no conviction) for assaulting his roommate by choking her with a pillow.

    c.    As seen above, he continued criminal thinking and behavior.  While incarcerated, he has not enrolled or participated in any meaningful programming.  He demonstrates a lifestyle of getting by with minimal effort or involvement.

    d.    The Court ordered he be placed in a PLP RRC for up to 120 days including pre-release until released by USPO or RRC Manager.  (Id. at 2-3.)

## II.  **Statutory Background**.

Congress has delegated inmate placement authority to the BOP in two statutes:  18 U.S.C. §§ 3621(b) and 3624(c).  Under § 3621(b), the BOP is delegated broad discretionary authority to determine the proper placement of inmates at the start of an inmate's prison term.  E.g., Rodriquez v. Smith, 541 F.3d 1180, 1182 (9th Cir. 2008).  Placement designations require consideration of five statutory factors:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence-
>     (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and

> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.  18 U.S.C. § 3621(b).

When considering the transfer of an inmate during the course of his imprisonment, the BOP must consider these same five factors.  18 U.S.C. § 3621(b); Levine v. Apker, 455 F.3d 71, 85 (2d Cir. 2006); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 247 (3d Cir. 2005).

Under § 3624(c), the BOP is required to evaluate an inmate for RRC placement near the end of an inmate's sentence.  The Second Chance Act, Pub. Law 110-199, §231, 122 Stat. 657 (April 9, 2008)(SCA), amended § 3624(c), increasing an inmate's RRC eligibility from six to twelve months.  That statute now provides:

> (1) In general.- The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

**III.  BOP Memoranda and Program Statements.**

The BOP has issued two memoranda addressing RRCs and the SCA. An April 14, 2008 guidance memorandum details changes required by the SCA, including providing an RRC assessment 17 to 19 months prior to release, instead of the previous time frame of 11 to 13 months. The April 14 Memorandum directs staff to conduct individualized assessments using the five factors of § 3621(b).

The memorandum instructs staff that all inmates are eligible for a maximum of twelve months RRC time, but that placements for longer than six months require approval from the Regional Director.

The April 14 Memorandum references Program Statement 7310.04, which provides that "[a]n inmate may be referred for up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification." In such circumstances, the warden must obtain approval from the Regional Director.

A November 14, 2008, guidance memorandum, pertains to inmate requests for transfers to RRCs when they have more than twelve months remaining on their sentences, and similarly requires unusual or compelling circumstances and approval from the Regional Director for RRC placements beyond six months.[1]

## DISCUSSION

On April 24, 2009, petitioner filed a petition for writ of habeas corpus seeking immediate placement in an RRC. Petitioner argues that the BOP's 30-60 day RRC placement decision was based on

---

[1] In his petition, petitioner challenges the substantive and procedural validity of the November 14, 2008 Memorandum. However, the record before me is devoid of its application. By its terms the November 14, 2008 Memorandum pertains to RRC requests made pursuant to 18 U.S.C. 3621(b), made before the end of an inmate's sentence. Petitioner complains that he should have received more pre-release RRC time at the end of his sentence, pursuant to 18 U.S.C. 3624(c), and has not asserted that the BOP should have released him more than 12 months prior to his release date. Accordingly, I conclude that petitioner has no standing to challenge the November 14 Memorandum. Pierce v. Thomas, 08-705-MA (July 1, 2009).

three "overriding factors": (1) the BOP's misinterpretation of Judge Brown's orders revoking supervised release; (2) the anti-stacking rule in Program Statement 7310.04 which is contrary to the Congressional intent announced in the SCA; and (3) BOP memoranda and policy statements setting forth an unlawful six-month presumption for pre-release RRC placements absent extraordinary justification and Regional Director approval.[2]

**I.    This Court Has Jurisdiction.**

Respondent contends that this court lacks jurisdiction to hear petitioner's claims because he is not challenging the fact or duration of his confinement. I disagree. Because petitioner is challenging the "manner, location, or conditions of a sentence's execution," his claims are properly before this court pursuant to § 2241. Rodriquez, 541 F.3d at 1181 (addressing habeas corpus claims brought pursuant to § 2241 in which inmate sought immediate placement in an RRC); Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000)(challenges to the manner, location, or conditions of confinement must be brought pursuant to § 2241); see also Levine, 455 F.3d at 77-78 (determining that § 2241 habeas petition was the proper vehicle to challenge confinement in a federal prison versus an RRC); Woodall, 432 F.3d at 241-44(same).

---

[2] In support of his third contention, petitioner incorporates by reference the arguments made by the petitioner in Pierce v. Thomas, 08-705-MA.

II.  **Petitioner's Failure to Exhaust is Excused**.

Petitioner admits that he not exhausted his administrative remedies, but requests that exhaustion be excused. Because petitioner is challenging the legality of BOP policies, and would be unable to complete the administrative remedy process until well after any requested relief could be accomplished, his failure to exhaust is excused. See Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir. 2004).

III. **The BOP Applied the Relevant Statutory Factors**.

Petitioner's argument concerning the BOP's "anti-stacking" rule is twofold. First, petitioner contends that the BOP failed to recognize that Judge Brown's 120-day RRC placement was not intended strictly as a post-release term of placement. Second, he contends "to the extent the anti-stacking rule applies here, that rule is unlawful." (Petitioner's Memo. in Support at 4.) Because I conclude that the anti-stacking rule has not been applied to petitioner to his detriment, habeas relief is not warranted.

The "anti-stacking" policy at issue is contained in Program Statement 7310.04:

> b. Mandatory CCC Residence. When an inmate must reside in a CCC as a condition of parole, mandatory release, or supervised released supervision after release from confinement, the institution shall refer the case to the appropriate CCM, who shall refer the case for placement under these procedures:
>
> Institutions shall notify the USPC of cases that cannot be placed. Inmates in this category should not be

referred for transitional purposes and have this time
"stacked" on to the Court or USPC's ordered period of CCC
placement. (Respondent's Response, Exh. 2 at 14.)

To the extent that Judge Brown's order can be construed to
require placing petitioner in an RRC *pre-release*, his claim fails.
Recommendations by a sentencing court relating to RRC time are not
binding on the BOP. 18 U.S.C. § 3621(b). Whether and for how long
an inmate shall receive RRC time is left solely to the discretion
of the BOP.

Additionally, in petitioner's most current program review, the
anti-stacking policy was not applied. Rather, the RRC
recommendation of 30-60 days was premised upon consideration of the
factors enumerated in § 3621(b). (Status Report (#7), Exh. 1 at 2-
3.) As noted above, in Mr. Perona's declaration, he sets forth the
specific factors relevant to petitioner's case and states that his
placement decision was not premised upon the anti-stacking policy.
(Id.) Because petitioner's RRC placement was based upon the proper
statutory factors in § 3621(b) and § 3624(c), I reject his
contention that the anti-stacking policy was erroneously applied to
him, and decline to consider whether the anti-stacking policy is
contrary to the congressional intent announced in the SCA.[3]

_____

[3] In a status report, petitioner argues that his pre-
release RRC placement has been unreasonably delayed.
(Petitioner's Status Report (#10) at 4.) Petitioner argues that
Mr. Perona delayed forwarding petitioner's RRC release
application, and failed to include relevant information in it.
Respondent has submitted information indicating that petitioner's

**IV.**   **The April 14 Memorandum and Program Statement 7310.04 Are Consistent with §§ 3624(c) and 3621(b).**

As noted above, petitioner contends that the April 14 Memorandum and Program Statement 7310.04, requiring Regional Director approval and extraordinary justification for RRC placements longer than six months, was the driving force behind his 30-60 day RRC placement and is contrary to § 3624(c).

Petitioner argues that by referencing the five factors in § 3621(b) when amending § 3624(c), Congress did not approve of the additional limitations of Regional Director approval and extraordinary justification. And, petitioner asserts, by increasing RRC eligibility from six months to 12, Congress intended 12-month RRC placements, with a shorter duration justified only by application of the § 3621(b) factors. In response, respondent argues that the § 3621(b) factors are not exhaustive, and that the statute permits *additional* factors. I agree.

It is well settled that agency action must be consistent with the authorizing statute. <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984). If the statute speaks to the issue, "that is the end of the matter." <u>Id.</u> If the statute

---

application, including all pertinent information, was received by the CCM office on May 26, 2009. Petitioner has been approved for RRC placement in Eugene, beginning July 23, 2009. Although petitioner complains that he should have been placed in an RRC sooner, his July 23rd placement is well within the recommended 30-60 day pre-release RRC placement and does not warrant intervention by this court.

11 - OPINION AND ORDER

is silent or ambiguous with respect to the specific issue, the court must "sustain the agency's interpretation if it is 'based on a permissible construction' of the Act." Barnhart v. Walton, 535 U.S. 212, 218 (2002)(quoting Chevron, 467 U.S. at 843). This analysis applies to the BOP's interpretation of a statute, even if that interpretation only appears in a program statement or other internal agency guideline. Reno v. Koray, 515 U.S. 50, 61 (1995); Bowen v. Hood, 202 F.3d 1211, 1218 (9th Cir. 2000), cert. denied sub nom, Davis v. Hood, 531 U.S. 1111 (2001).

I conclude that the text of § 3624(c) is ambiguous with respect to whether the § 3621(b) factors are exhaustive. Accordingly, I must determine whether the BOP's interpretation of the statute is a permissible one. First, it is worthy of note that nothing in the text of § 3624(c) guarantees an RRC placement for inmates. Section 3624(c) as amended, provides that the BOP:

> shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reenty of that prisoner into the community. Such conditions may include a community correctional facility.

This language imposes a duty upon the BOP to *consider* placing inmates in an RRC for up to 12 months. See Rodriguez, 541 U.S. at 1184 (prior version of § 3624(c) imposed an affirmative duty on the BOP to consider placing an inmate in community confinement).

Section § 3624(c) also provides that the BOP shall place inmates under such "conditions" that will afford inmates an opportunity to adjust and prepare for reentry.  Those conditions "may" include an RRC, but the plain text does not *require* placement in an RRC.  See Stanko v. Rios, 2009 WL 1303969 *2 (D. Minn. May 8, 2009)(finding that nothing in § 3624(c)(2008) requires RRC placement for 12 months).  See also Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004)(§ 3624(c)(2000) imposes a duty to facilitate inmate's reentry, including, but not limited to RRCs, home confinement, drug or alcohol treatment programs); United States v. Laughlin, 933 F.2d 786, 789 (9th Cir. 1991)(§ 3624(c)(2000) does not guarantee a right to RRC time).

Additionally, the duty to consider RRC placements is limited "to the extent practicable."  See Elwood, 386 F.3d at 847 (BOP's obligation to facilitate inmate's reentry is limited by practical concerns such as security or space limitations).  Thus, contrary to petitioner's suggestion, § 3624(c) does not guarantee RRC placement, and certainly does not guarantee a 12-month placement.

Because the April 14 Memorandum and Program Statement 7310.04 are internal agency guidelines and exempt from notice and comment (see *infra* at pp. 17-21), the agency's interpretation receives deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944). Under Skidmore, the amount of deference accorded "depend[s] upon the thoroughness evident in its consideration, the validity of its

reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." U.S. v. Mead, 533 U.S. 218, 228 (2001); Tablada v. Thomas, 533 F.3d 800, 806 (9th Cir. 2008).

Section 3624(c) specifically requires that the BOP make individualized assessments under § 3621(b). Although the BOP must consider the five factors of § 3621(b) when making placement decisions, that list is non-exhaustive. Rodriquez, 541 F.3d at 1187 (recognizing, as did the First Circuit, that "other factors may be considered" but that the enumerated five factors may not be ignored); Levine, 455 F.3d at 86 ("We read the § 3621(b) factors as non-exclusive"). Accord Cohen v. United States, 151 F.3d 1338, 1343 (11th Cir. 1998), cert. denied, 526 U.S. 1130 (1999)(giving the BOP ample room for judgment by listing a non-exhaustive set of factors in § 3621(b) for the BOP to consider).

Given the BOP's broad discretionary authority under § 3621(b), it is permissible for the BOP to consider additional factors, such as Regional Director approval and extraordinary justification for placements beyond six months.[4] Miller v. Whitehead, 527 F.3d 752,

---

[4] Congress passed § 3624(c) with an eye toward the BOP's broad discretionary placement authority pursuant to § 3621(b). For example, § 3624(c) provides:

> (4) NO LIMITATIONS.– Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

757-58 (8th Cir. 2008) (concluding Program Statement 7310.04 requiring extraordinary circumstances is within BOP's discretion); Daraio v. Lappin, 2009 WL 3030995 (D.Conn. Feb. 9, 2009), adhered to on recon., 2009 WL 712363 (March 13, 2009)(same).

Petitioner relies upon Strong v. Schultz, 599 F.Supp.2d 556 (D.N.J. 2009), wherein the court concluded that the April 14 Memorandum was inconsistent with the Second Chance Act. In Strong, an inmate challenged his six month RRC placement, which was made pursuant to § 3624(c)(2008) and the April 14 Memorandum. The inmate contended that the April 14 Memorandum contradicted the Second Chance Act because it continued a "presumptive norm" of six months placement. Id. at 560. The Strong court agreed:

> By increasing the placement period to 12 months and requiring the BOP to ensure that placements are long enough to provide "the greatest likelihood of successful reintegration," Congress intended that each inmate would be considered for a placement of the longest duration-12 months-although the ultimate placement may be less than 12 months, if warranted by the application of the § 3621(b) factors[.] Id. at 562

The Strong court concluded that the April 14 Memorandum impermissibly constrained staff discretion to consider inmates for RRC placements and was inconsistent with § 3624(c). Id. at 563. I respectfully disagree.

The Second Chance Act does not require that an RRC placement be of the greatest duration-only that it be "of sufficient duration" to provide the greatest likelihood of success. 18 U.S.C.

§ 3624(c)(6)).  What conditions, including what is a "sufficient duration" to ensure the greatest likelihood of success has been left exclusively to the discretion of the BOP.  It is for the BOP to determine whether an inmate should be placed in an RRC, if at all, and for what length of time.

Petitioner argues that the rules have the practical effect of categorically limiting placements to six months or less, thereby frustrating the intent of the SCA and running afoul of Rodriquez v. Smith.  Petitioner asserts this categorical effect is evidenced by the fact that no inmates at FCI Sheridan have received RRC placements longer than six months.

I disagree.  This is not the same type of categorical exclusion struck down in Rodriquez.  There, the BOP had eliminated all inmates who had not served 90 percent of their sentences from consideration for RRC placement.  Rodriquez invalidated those regulations because they, categorically, failed to provide individualized assessments under § 3621(b).

Here, the BOP is providing exactly what Rodriquez requires—individualized placement decisions under § 3621(b).  The internal memoranda and program statement permit, through the demonstration of individual circumstances, extended RRC placements.  Miller, 527 F.3d at 757-58; Yaeger v. Whitehead, 2008 WL 2330221 (D.S.D. June 3, 2008).  That the BOP is considering additional factors pursuant to § 3621(b) when making those placement

16 - OPINION AND ORDER

decisions, is permissible.  Indeed, <u>Rodriguez</u> recognized that the
five factors contained in § 3621(b) were not exhaustive.
<u>Rodriguez</u>, 541 F.3d at 1187.  Thus, the memorandum and program
statement are not the type of categorical exclusion struck down in
<u>Rodriguez</u>.

Although petitioner may have set out a reasonable alternative
interpretation of § 3624(c), the BOP's method for determining
extended RRC placements contained in its Memorandum and Program
Statement 7310.04 is rationally valid.  Because the BOP's
interpretation is a permissible construction of the statute, it
must be upheld.  <u>See</u> <u>Skidmore</u>, 323 U.S. at 140; <u>Tablada</u>, 533 F.3d
at 808.

**V.    <u>The April 14 Memorandum and Program Statement 7310.04 Are</u>
<u>General Statements of Policy or Interpretive Rules</u>.**

According to petitioner, because the memorandum and program
statement "unequivocally establish a binding norm" of six months by
requiring Regional Director approval and extraordinary
justification for placements longer than six months, the rules are
substantive and are invalid because they did not undergo notice and
comment.  Petitioner also contends that the rules are substantive
because they affect individual prisoner rights by limiting access
to pre-release programming and restrict BOP staff discretion.
Respondent submits the rules are internal agency guidelines to
which the APA procedural requirements do not apply.

17 - OPINION AND ORDER

Only substantive, or legislative, rules must comply with the notice and comment procedures of the APA.  Chrysler Corp. v. Brown, 441 U.S. 281, 302 n.31 (1979).  An agency need not follow the notice and comment procedures to issue an interpretive rule or a general statement of policy.  5 U.S.C. § 553(b)(3); Hemp Industries Ass'n v. Drug Enforcement Admin., 333 F.3d 1082, 1087 (9th Cir. 2003).

Whether a rule is substantive turns not on the agency's characterization of the rule, but on whether the rule affects individual rights and obligations.  Chrysler Corp., 441 U.S. at 302; Gunderson v. Hood, 268 F.3d 1149, 1154 (9th Cir. 2001), Yesler v. Cisneros, 37 F.3d 442, 449 (9th Cir. 1994).  If a rule amends an existing legislative rule, it is substantive because it imposes new rights or obligations.  Gunderson, 268 F.3d at 1154. However, notice and comment rulemaking is not required to amend a previous interpretive rule.  Erringer v. Thompson, 371 F.3d 625, 632 (9th Cir. 2004).

An interpretive rule is one that advises the public of the agency's construction of statutes and regulations it administers.  Shalala v. Gurnsey, 514 U.S. 87, 99 (1995).  A general statement of policy "presages an upcoming rulemaking or announces the course which the agency intends to follow[.]"  Pacific Gas & Elec. Co. v. Federal Power Comm'n, 506 F.2d 33, 38 (D.C. Cir. 1974).  General statements of policy and administrative rules lack the force of

law, and are not determinative of the issues or rights to which they are addressed. Id.

In determining whether the BOP memorandum and program statement are substantive or merely interpretive or a general statement of policy, I find the analysis in Alcaraz v. Block, 746 F.2d 593 (9th Cir. 1984), helpful. There, the court examined whether rules requiring the submission of parents' social security numbers to verify eligibility to receive reduced price lunches for their schoolchildren were substantive or interpretive. The court concluded the regulations were interpretive because they tracked what the governing statute required:

> No law was created; the regulations simply explained something the statute already required. The fact that *burdens* were imposed on [the plaintiffs] only goes to the substantial impact of the statutes and regulations, not whether the regulations created law. That the regulations may have altered administrative duties or other hardships does not make them substantive. Id. at 613-14.

Like the interpretive rule in Alcaraz, the April 14 Memorandum did not create law, and is not independently determinative of the issues it addresses. An inmate has no right to placement in an RRC for any length of time. Although the SCA expanded the available RRC placement time from six to twelve months, it did not create a "right" to RRC placement. See Laughlin, 933 F.2d at 789. As in Alcaraz, the source of petitioner's alleged "right"-to be considered for RRC placement-is the SCA itself, not the BOP

Memoranda or Program Statement 7310.04.   I likewise conclude that Program Statement 7310.04 is an internal agency guideline.   Program Statement 7310.04 does not by itself operate to deny any "rights" of petitioner.   Pacific Gas & Elec., 506 F.2d at 39.   The program statement does not have the force of law, but explains how the BOP will assess RRC placements in future cases.   See, e.g., Reno, 515 U.S. at 61; Tablada v. Thomas, 533 F.3d at 806; Gunderson v. Hood, 268 F.3d 1149, 1154 (9th Cir. 2001).

That the memorandum and program statement require petitioner to demonstrate extraordinary justification and Regional Director approval, does not render them substantive in nature.   Petitioner's real argument is that following the SCA, the program statement is now inconsistent with § 3624(c).   That, however, is a different question addressed above.   Whether the program statement and memorandum are consistent with the statute goes to their substantive validity, not to whether the rules are legislative or interpretive.

Petitioner also argues that the rules are substantive because they restrict BOP staff discretion by requiring regional director approval and extraordinary justification.  Petitioner's reliance on Smith v. Shettle, 946 F.2d 1250 (7th Cir. 1991), is unavailing.   In Smith, the Seventh Circuit determined that an Indiana statute created a liberty interest in being free from solitary confinement while in prison by requiring prison officials to follow specific

20 - OPINION AND ORDER

criteria when segregating inmates. <u>Id.</u> at 1254. Because the present case does not involve a liberty interest, <u>Smith</u> is simply not helpful.

In sum, I conclude that the April 14 Memorandum and Program Statement 7310.04 are internal agency guidelines which do not trigger the procedural requirements of 5 U.S.C. § 553.

**VI.** **<u>Relief under § 706 Is Not Warranted</u>.**

Under § 706 of the Administrative Procedures Act (APA), final agency actions, findings and conclusions will be upheld unless they are arbitrary, capricious, an abuse of discretion, or not in accordance with the law. 5 U.S.C. § 706(2)(A). An final agency action must be upheld if the agency has a reasonable basis for the decision, and has "'considered the relevant factors and articulated a rational connection between the facts found and the choices made.'" <u>Arrington v. Daniels</u>, 516 F.3d 1106, 1112 (9th Cir. 2008), <u>quoting</u> <u>Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agriculture</u>, 415 F.3d 1078, 1093 (9th Cir. 2005).

Petitioner contends that the six-month presumption contained in the April 14 Memorandum and Program Statement 7310.04 are invalid under 5 U.S.C. § 706(2)(A) because the BOP has failed to articulate a sufficient rationale to support the presumption.[5]

_____

[5] I agree with respondent that to the extent that petitioner is challenging the _application_ of the April 14 Memorandum and Program Statement 7310.04 to his particular case under § 706, Congress has foreclosed his claim. <u>See</u> 18 U.S.C. § 3625.

Relying on the Ninth Circuit's decision in Arrington, petitioner argues that the BOP's proffered reason for the rule—that most inmate reentry needs can be met within six months—is not based on empirical facts. In response, respondent argues that the April 14 Memorandum and Program Statement 7310.04 are internal agency guidelines, are not subject to APA rulemaking requirements, and, therefore, relief under § 706 is not warranted. I agree.

In Arrington, the Ninth Circuit addressed whether the BOP complied with the requirements of § 706 of the APA in promulgating a regulation which categorically excluded from eligibility for early release those inmates convicted of a felony involving the carrying, possession, use of a firearm or other dangerous weapon or explosive. 516 F.3d at 1111. The Ninth Circuit concluded that the BOP's failure to provide any rationale for its decision rendered the regulation invalid under the APA. Id. at 1114.

In the instant proceeding, however, I have concluded that the April 14 Memorandum and Program Statement 7310.04 are internal agency guidelines and, as discussed above, meet the standard set forth in Skidmore. The BOP's interpretation of § 3624(c) is

---

However, to the extent that petitioner is challenging the BOP's rule-making activities under 5 U.S.C. § 553, the claim is properly before the court. See Fristoe v. Thompson, 144 F.3d 627, 630-31 (10th Cir. 1998); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998); Cozine v. Crabtree, 15 F.Supp.2d 997, 1014 (D. Or. 1998); Iacaboni v. Unites States, 251 F.Supp.2d 1015, 1035-36 (D.Mass. 2003).

rationally valid, and therefore petitioner's argument under § 706 cannot stand.  <u>Tablada</u>, 533 F.3d at 805.

<u>**CONCLUSION**</u>

Based on the foregoing, petitioner's petition for writ of habeas corpus (#1) is DENIED, and this proceeding is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this _22_ day of July, 2009.

_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge